1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DWAYNE SWEARINGTON,

11            Plaintiff,                 No. CIV S-06-1407 GEB KJM P

12        vs.

13   DR. WEDELL, et al.,                 ORDER AND

14            Defendants.                FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a California prisoner proceeding pro se with an action for violation of

17   civil rights under 42 U.S.C. § 1983.  The motion for summary judgment brought by defendants

18   Wedell, Duru and Duc (defendants) is before the court.  This action is proceeding against

19   defendants, all of whom are medical doctors, for alleged violations of the Eighth Amendment.

20   See Order dated October 23, 2007.  Plaintiff's amended complaint, which is signed under penalty

21   of perjury, contains four claims, described in more detail as follows:  1) against defendant Duc

22   arising out of plaintiff's visit with him on March 23, 2004; 2) against defendant Duc arising out

23   of plaintiff's visit with him on November 15, 2004; 3) against defendant Wedell arising out of

24   plaintiff's visit with him on December 27, 2004 and Wedell's alleged refusal to see plaintiff the

25   next day; and 4) against defendant Duru arising out of plaintiff's visit with her on December 31,

26   2004.

I. <u>Preliminary Matters</u>

    A. <u>Plaintiff's Unsigned Oppositions</u>

        The court notes that on April 28, 2010, plaintiff filed three separate declarations comprising his opposition to defendants' motion for summary judgment. <u>See</u> Docket Entries 74-76. The only declaration that is signed is the one titled "Declaration Of [plaintiff] In Support Of [plaintiff's] Motion In Opposition To Defendant Dr. Vuong Duc's Motion For Summary Judgment." Under Rule 11 of the Federal Rules of Civil Procedure, all documents submitted by a pro se party must be signed by that party. <u>See also</u> Local Rule 131(b). The court cannot consider the unsigned documents filed by plaintiff in opposition to defendants' motion for summary judgment.

    B. <u>Request For Judicial Notice</u>

        Defendants request that the court take judicial notice of "Exhibit A," attached to their motion. <u>See</u> Defs.' Mem. P. & A. in Supp. Summ. J. (MSJ) at 5:22-24. Exhibit A is a medical record concerning plaintiff apparently authored by defendant Duru based on a visit on December 31, 2004. Defendants request that the court take judicial notice of the exhibit because plaintiff included it with his opposition to a separate motion for summary judgment filed by defendant Weiner. <u>Id</u>.

        A court does not take judicial notice of a document, it takes judicial notice of facts "not subject to reasonable dispute." <u>See</u> Fed. R. Evid. 201. Defendants rely on the document for the following facts: plaintiff did not have an appointment but was a walk-in patient; Duru did not have plaintiff's medical records available to review; plaintiff told Duru he experienced chronic pain following his mastectomy and he had received a steroid injection the week before; Duru examined plaintiff and found no lumps; Duru concluded plaintiff might be suffering from mental pressures that could contribute to pain; Duru prescribed plaintiff Naproxen for pain, and referred him to a surgeon and a psychologist, and told plaintiff to come back in one week if his symptoms continued. MSJ at 5:24-6:11. These are not the kinds of facts susceptible of judicial

1  notice.  The document is not authenticated by anything in the record; by merely including the

2  document in an omnibus exhibit attached to an earlier filing, plaintiff did not admit all the facts

3  defendants point to.  While defendant's request for judicial notice will be denied, the facts

4  plaintiff admits to in his verified amended complaint with respect to his visit with Dr. Duru on

5  December 31, 2004, will be considered, as discussed below.

6  II.  Summary Judgment Standard

7         Summary judgment is appropriate when it is demonstrated that there exists "no

8  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

9  matter of law."  Fed. R. Civ. P. 56(c).

10         Under summary judgment practice, the moving party
            always bears the initial responsibility of informing the district court
11         of the basis for its motion, and identifying those portions of "the
            pleadings, depositions, answers to interrogatories, and admissions
12         on file, together with the affidavits, if any," which it believes
            demonstrate the absence of a genuine issue of material fact.

13

14  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

15  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

16  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

17  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

18  after adequate time for discovery and upon motion, against a party who fails to make a showing

19  sufficient to establish the existence of an element essential to that party's case, and on which that

20  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

21  concerning an essential element of the nonmoving party's case necessarily renders all other facts

22  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

23  whatever is before the district court demonstrates that the standard for entry of summary

24  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

25         If the moving party meets its initial responsibility, the burden then shifts to the

26  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3

1  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

2  establish the existence of this factual dispute, the opposing party may not rely upon the

3  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

4  form of affidavits, and/or admissible discovery material, in support of its contention that the

5  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

6  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

7  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

8  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

9  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

10 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

11 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914

12 F.2d 1564, 1575 (9th Cir. 1990).

13        In the endeavor to establish the existence of a factual dispute, the opposing party

14 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

15 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

16 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

17 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

18 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

19 committee's note on 1963 amendments).

20        In resolving the summary judgment motion, the court examines the pleadings,

21 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

22 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

23 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

24 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

25 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

26 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

4

1  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

2  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

3  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

4  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

5  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

6          On November 20, 2007, the court advised plaintiff of the requirements for

7  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

8  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and

9  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

10  III.  Plaintiff's Allegations

11          Plaintiff alleges as follows in his verified amended complaint:

12          1.  During all times relevant, defendants were physicians employed at California

13  State Prison Sacramento (CSPS) and plaintiff was housed there.  Am. Compl. (docket no. 11) at

14  9-11, 19.[1]  Plaintiff arrived at CSPS on February 28, 2001.  Id. at 22.

15          2.  On January 31, 2002, plaintiff had surgery to alleviate chest pain.  Id. at 22.  A

16  left breast mastectomy was performed.  Id. at 21, 22, 44.

17          3.  Approximately one year after the surgery, plaintiff began to suffer pain in his

18  chest.  Id. at 22-23.

19          4.  On March 23, 2004, plaintiff complained to defendant Duc of pain and the

20  return of benign chest tumors to the left side of his chest.  Dr. Duc refused to examine plaintiff's

21  chest and told plaintiff there was nothing he could do.  Id. at 25.  Plaintiff asked Dr. Duc if he

22  could be referred to a specialist.  Id.  Dr. Duc said "he would see what he could do."  Id.  At some

23  point, plaintiff was seen by the doctor who performed plaintiff's surgery.  Id.  It is not clear from

24  plaintiff's complaint when the visit to the surgeon occurred.

25  _____

26          [1]  Page references to the amended complaint are to those assigned by the court's CM/ECF
   system.

1    5.  Plaintiff returned to Dr. Duc on November 15, 2004 complaining about the

2    return of lumps on his chest.  Id.  Duc examined plaintiff's chest, confirmed there was a problem

3    and indicated he would refer plaintiff back to his surgeon.  Id. at 25-26.  It is not clear whether

4    plaintiff ever saw his surgeon again.

5    6.  On December 27, 2004, plaintiff experienced excruciating pain.  Id. at 26.

6    Defendant Wedell examined plaintiff.  After examining plaintiff, Dr. Wedell surmised that the

7    pain might be from the scar resulting from plaintiff's past surgery.  Id. at 27.  He gave plaintiff a

8    steroid shot in plaintiff's back and indicated the shot might or might not alleviate the pain.  Id.

9    Dr. Wedell told plaintiff that if the pain persisted he should come back to see Dr. Wedell the

10   following day.  Id.  Plaintiff tried to see Dr. Wedell the next day, but Wedell refused to see

11   plaintiff.  Id. at 27-28.

12   7.  Because he was still experiencing pain, plaintiff was seen by Dr. Duru on

13   December 31, 2004.  Id. at 29, 47. Plaintiff states that Duru "would not visually look at plaintiff's

14   problem" and "stated there was nothing she could do for the chronic pain."  Id. at 47.  Duru did

15   give plaintiff ibuprofen and referred plaintiff to a psychologist thinking plaintiff might be having

16   mental problems.  Id. at 29.  Plaintiff did see a psychologist on January 10, 2005 who determined

17   there was nothing wrong with plaintiff's mental state.  Id. at 30, 47.

18   IV.  Standard For Medical Care Under The Eighth Amendment

19   The Eighth Amendment's prohibition of cruel and unusual punishment extends to

20   medical care of prison inmates.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  In order to state

21   a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a

22   prison inmate must allege "acts or omissions sufficiently harmful to evidence deliberate

23   indifference to serious medical needs."  Id. at 106.  For "deliberate indifference" to be

24   established, the nature of a defendant's responses must be such that the defendant purposefully

25   ignores or fails to respond to a prisoner's pain or possible medical need.  McGuckin v. Smith,

26   974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies,

1   Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

2           Deliberate indifference may occur when prison officials deny, delay, or

3   intentionally interfere with medical treatment, or may be demonstrated by the way in which

4   prison officials provide medical care.  Id. at 1059-60.  Unnecessary continuation of pain may

5   constitute the "harm" necessary to establish and Eighth Amendment violation from delay in

6   providing medical care.  Id. at 1062.  However, a showing of merely inadvertent or even

7   negligent medical care is not enough to establish a constitutional violation.  Estelle, 429 U.S. at

8   105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998).  A difference of opinion about the

9   proper course of treatment is not deliberate indifference nor does a dispute between a prisoner

10  and prison officials over the necessity for or extent of medical treatment amount to a

11  constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004);

12  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

13  V.  Defendants' Arguments And Analysis

14       A.  Visit With Defendant Duc on March 23, 2004

15          In his declaration, defendant Duc indicates that medical records produced to him

16  by plaintiff fail to show that he met with plaintiff on March 23, 2004.  Decl. of Dr. Vuong Duc

17  (Duc Decl.) ¶ 4.  Duc also points to certain of those records indicating plaintiff saw a nurse for

18  his chest pain on March 24, 2004 and that plaintiff was referred to the person that performed his

19  mastectomy, Dr. Weiner, by defendant Wedell on March 25, 2004 for chest pain.  Id. & Ex. A.

20  Dr. Duc says he does not have access to any other medical records of plaintiff.  Id. ¶ 4.

21          Plaintiff insists in his opposition that the facts alleged and verified in his amended

22  complaint about his visit with Dr. Duc on March 23, 2004 are true.  Opp'n (docket no. 75) at 2-3.

23  He also references an "Exhibit A" and an "Exhibit B"[2] in support of this assertion, but no

24  _____

25      [2] In both his amended complaint and his opposition to Dr. Duc's motion, it appears that
    plaintiff may be referencing exhibits to his original complaint.  However, he does not make this
26  clear, and does not otherwise specifically describe the exhibits or their contents such that the

                                           7

1  exhibits are attached to his opposition.

2      While the evidence in support of plaintiff's claim against Dr. Duc is not strong,

3  plaintiff's verified statement that he saw Dr. Duc on March 23, 2004, that he complained of pain

4  and that Dr. Duc essentially did nothing is sufficient to create a material fact in dispute so as to

5  withstand summary judgment.  Plaintiff has put forward enough evidence of the elements of an

6  Eighth Amendment denial of medical care claim as defined above so that a rational trier of fact

7  could find in favor of plaintiff thereby precluding summary judgment for defendants.  See

8  Matsushita, 475 U.S. at 587; McGuckin v. Smith, 974 F.2d at 1062.  While the fact that plaintiff

9  has not pointed to any records in the record on summary judgment in support of his claim

10  weakens it, but it does not exclude the possibility that plaintiff saw Dr. Duc on March 23, given

11  plaintiff's sworn testimony regarding such a visit.

12      B.  Visit With Defendant Duc on November 15, 2004

13      In his declaration, defendant Duc admits that he did see plaintiff on November 15,

14  2004.  Duc Decl. ¶ 5.  Duc indicates he was of the opinion that plaintiff was experiencing pain

15  from his surgical scar.  Id.  However, because he is not an oncologist or cancer specialist, he

16  referred plaintiff back to his surgeon.  Id.  Dr. Duc indicates that he did all he thought reasonably

17  necessary for plaintiff.  Id.

18      Plaintiff does not dispute that Dr. Duc examined him on November 15 and

19  ordered a surgical consult for pain along plaintiff's "old scar."  Opp'n at 5-6.

20      There is insufficient evidence before the court for a jury to find that defendant

21  Duc was deliberately indifferent to plaintiff on November 15, 2004.  Nothing suggests Duc

22  ignored plaintiff; rather it is undisputed that Duc referred plaintiff back to his surgeon for further

23  examination.  Plaintiff fails to point to any evidence indicating Duc was required to have done

24
25  court can confirm their authenticity or take judicial notice of facts they contain.  The court does
   not rely on any such exhibits in resolving the pending motion.  See Loux v. Rhay, 375 F.2d 55,
   57 (9th Cir. 1967) (amended complaint supersedes original rendering original complaint "non-
26  existent"); see also Local Rule 220 (amended complaint supersedes original).

1    something more.  As indicated above, a mere difference of opinion with respect to what care

2    should be provided is not enough to save an Eighth Amendment denial of medical care claim.

3         C.  <u>Visit With Defendant Wedell on December 27 and 28, 2004</u>

4            Dr. Wedell agrees that he saw plaintiff on December 27, 2004, and surmised at

5    the time that plaintiff was suffering pain from his surgical scar.  Decl. of James Wedell (Wedell

6    Decl.) ¶ 5.  He gave plaintiff a shot of Lidocaine for pain and Solu-Medrol to reduce

7    inflammation.  <u>Id</u>.  Wedell asserts he then told plaintiff to follow up with a specialist if his

8    symptoms persisted.  Wedell does not say he told plaintiff to return to him the following day.  <u>Id</u>.

9    He also asserts he never refused plaintiff treatment.  <u>Id</u>. ¶ 6.

10            Nothing before the court suggests defendant Wedell was deliberately indifferent to

11    plaintiff on December 27, 2004: Wedell treated plaintiff and there is no evidence indicating the

12    treatment he provided reflected indifference or caused pain.  While the parties dispute whether

13    Wedell refused to see plaintiff on December 28, 2004, this dispute does not rise to the level of

14    materiality required to defeat summary judgment because there is nothing before the court

15    suggesting Dr. Wedell did not do all that was medically appropriate for plaintiff's condition on

16    December 27, 2004 or that Wedell was otherwise required to see plaintiff on December 28, 2004.

17    Defendants should be granted summary judgment with respect to plaintiff's claim against

18    defendant Wedell.

19         D.  <u>Visit With Defendant Duru on December 31, 2004</u>

20            Defendants have not provided a declaration from defendant Duru in support of

21    their motion for summary judgment.  They point to plaintiff's medical records for December 31,

22    2004.  Although the records might be admissible under an exception to the hearsay rule, Fed. R.

23    Evid. 803(4), the threshold requirement of authenticity is not satisfied in that the records are not

24    accompanied by a declaration of a custodian of records or otherwise authenticated by a clear,

25    verified description of how they originally were produced or obtained or whether they are the

26    only records relevant to plaintiff's claim against Duru. <u>See</u> <u>Orr v. Bank of America, NT & SA</u>,

285 F.3d 764 (9th Cir. 2002) (court cannot rely on unauthenticated records in granting summary

judgment).  As noted above, the facts contained in the records are not susceptible of judicial

notice.  However, plaintiff pleads certain facts in his verified amended complaint, on which the

court relies: Plaintiff was still experiencing pain at the time he saw Dr. Duru, but she "would not

visually look at plaintiff's problem" and "stated there was nothing she could do for the chronic

pain."  Duru told plaintiff she wanted him to see a "staff psychologist" because he might be

having mental problems, and she prescribed plaintiff ibuprofen for pain; he did see the

psychologist[3] who "determined that there was nothing psychologically wrong with plaintiff," and

referred him back to Dr. Duru.  Am. Compl. at 29-30, 47; cf. MSJ at 5:24-6:11.  On this record,

while it is undisputed that Duru saw plaintiff on December 31, 2004, there is a question of

material fact as to whether she effectively ignored plaintiff's complaints of pain by trivializing

and discounting them.  See Hayes v. Snyder, 546 F.3d 516, 524 (7th Cir. 2008) (plaintiff does not

have to show his complaints of pain were ignored to show deliberate indifference, he must show

the response to his pain was plainly inappropriate as to permit the inference that plaintiff's needs

were intentionally or recklessly disregarded).  Duru's motion for summary judgment should be

denied.

        Accordingly, IT IS HEREBY ORDERED that defendants' January 19, 2010

request for judicial notice is denied.

        IT IS HEREBY RECOMMENDED that the motion for summary judgment filed

by defendants Duc, Wedell and Duru (#55) be granted in part and denied in part as follows:

        1) Denied with respect to plaintiff's claim arising out of his visit with Dr. Duc on

March 23, 2004;

        2) Denied with respect to plaintiff's claim arising out of his visit with Dr. Duru on

December 31, 2004; and

---

        [3] Plaintiff's second reference actually uses the phrase "staff psychiatrist."  Am. Compl. at
29.

1        3) Granted in all other respects thereby resulting in defendant Wedell being

2    dismissed from this action.

3        These findings and recommendations are submitted to the United States District

4    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

5    one days after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7     "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8    shall be served and filed within fourteen days after service of the objections.  The parties are

9    advised that failure to file objections within the specified time may waive the right to appeal the

10   District Court's order.  Martinez  v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11   DATED:  August 10, 2010.

_____
U.S. MAGISTRATE JUDGE

1
swea1407.57(3)