IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWAYNE SWEARINGTON,

      Plaintiff,                    No. CIV S-06-1407 GEB KJM P

     vs.

DR. WEDELL, et al.,

      Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Defendant Dr. Weiner's motion for summary judgment is before the court. This action is proceeding against defendant Weiner for an alleged violation of the Eighth Amendment. <u>See</u> October 23, 2007 Order (docket entry #14).

/////
/////
/////
/////
/////
/////
/////

I. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F. 2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On November 20, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Eighth Amendment Standards

The Eighth Amendment's prohibition of cruel and unusual punishment extends to medical care of prison inmates.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  In order to survive a motion for summary judgment on an Eighth Amendment claim of inadequate medical care, a prison inmate must point to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.  The nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established.  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).

Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be demonstrated by the way in which prison officials provide medical care.  Id. at 1059-60.  Unnecessary continuation of pain may constitute the "harm" necessary to establish and Eighth Amendment violation from delay in providing medical care.  Id. at 1062.  However, a showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998).  A difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

/////

III. Factual Record

    A. Plaintiff's Account

Plaintiff alleges as follows in his amended complaint, which he signed under the penalty of perjury.

During the relevant period of time, defendant was a surgeon at Doctors Hospital in Manteca. Am. Compl. at 10-11.[1] Pursuant to a contract with the California Department of Corrections and Rehabilitation (CDCR), defendant provided medical care to plaintiff who was an inmate at California State Prison Sacramento (CSPS). Id. at 11. Plaintiff suffered chronic pain from August 23, 1999 until January 31, 2002 when plaintiff underwent a left breast mastectomy following complaints to CSPS medical staff. Id. at 22. Defendant performed plaintiff's mastectomy on January 31, 2002. Id. at 22, 44. After the operation, plaintiff continued to suffer from serious and chronic pain in his chest. Id. at 22-23.

On March 23, 2004, plaintiff asked his primary care provider to refer him to a specialist in benign tumors. Plaintiff subsequently met again with defendant, whom he had not seen since the surgery on January 31, 2002. Id. at 25. Plaintiff avers defendant asked, "What are you doing here?" and then stated "I don't want to see you." Plaintiff said he was there to see defendant about plaintiff's chest pain and for defendant to "examine the lumps that have come back." Defendant glanced at plaintiff and asked him to point to the location of the pain. Plaintiff pointed to the left side of his chest where the operation had been performed. Without examining plaintiff's chest manually, defendant stated that plaintiff had a heart problem and instructed the correctional officers to take plaintiff to the main hospital for an EKG, which plaintiff received. Id. at 25, 44-45. Following the visit with defendant, plaintiff continued to complain to prison medical staff about plaintiff's serious chest pain. Id. at 25-26. Plaintiff alleges that had

/////

---

[1] With respect to plaintiff's amended complaint, the page numbers referenced are the page numbers assigned by the court's electronic docketing system.

5

defendant treated plaintiff appropriately, defendant could have eliminated or prevented an escalation in plaintiff's pain. Id. at 45.

In his opposition, which also is signed under the penalty of perjury, plaintiff disagrees with defendant's characterization of a visit defendant says occurred on August 18, 2004. While it is not clear, the August visit appears to have been the date of the post-surgical visit plaintiff describes in his complaint. In any event, plaintiff disputes defendant's description of the visit and claims he did not report suffering from numbness during that visit. See Opp'n at 7 (docket entry #70).[2]

B. Defendant's Account

In his declaration, defendant asserts he first saw plaintiff on December 19, 2001 for complaints of swelling and pain on the left side of plaintiff's chest. Defendant examined plaintiff and noted he had fibrocystic changes underneath the breast and the breast was tender to touch. Defendant diagnosed plaintiff with left breast gynecomasty and recommended a simple mastectomy. Defendant performed the mastectomy on January 31, 2002. There were no complications during surgery. Plaintiff was in recovery at defendant's hospital from January 31, 2002 until February 4, 2002. After surgery, defendant determined that plaintiff had tolerated the surgery well.

Defendant says he last saw plaintiff on August 18, 2004. According to defendant, plaintiff complained of chest pain and numbness. Defendant performed a physical examination on plaintiff and determined that the surgical site was well healed. Upon palpation, defendant noticed some slight trigger areas but considered them mild and most likely evidence of neuralgia. Defendant noticed no evidence of lipoma and there was no evidence of fluid accumulation. Based upon plaintiff's complaints of chest pain and numbness and defendant's
/////

---

[2] With respect to plaintiff's opposition, the page numbers referenced are those assigned by the court's electronic docketing system.

6

inability to form an etiology for plaintiff's complaint, defendant referred plaintiff for an EKG and cardiac follow-up. See Declaration of Jerry W. Weiner, M.D. (Weiner Decl.) ¶¶ 2-5.

Defendant also provides authenticated copies of plaintiff's medical records, from his own files and from plaintiff's place of incarceration. The records include defendant's progress note for his visit with plaintiff on August 18, 2004. See Decl. of Pamela Peters, Ex. A at 1 (progress note) & Ex. C (declaration of custodian of records). The treatment report section of the progress note includes results of an "exam," including that "site well-healed," "no sign of local problem," and "see no evidence of surgical problems." The plan section of the report indicates "unclear etiology of chest pain. . . operative site looks normal. Sent to medical clinic." The diagnosis is recorded as "Chest pain [possible origin] cardiac etiology." Id. at 1. The records also include a progress note, apparently made by prison medical staff upon plaintiff's return from his outpatient evaluation visit with defendant on August 18, 2004; this progress note indicates that plaintiff told prison medical staff, "I'm not hurting," and he "denies pain at present." See Id., Ex. B at 1 (declaration of custodian of records), 229 (progress note).[3]

Defendant also provides a declaration from a Dr. Baker, who is board-certified in general surgery. Based on his review of plaintiff's medical records and defendant's declaration, Dr. Baker opines that defendant's examination of plaintiff on August 18, 2004 "met the applicable standard of care . . . [without] acts or omissions . . . caus[ing] substantial injury to plaintiff. . ." Decl. Of Michael S. Baker, M.D. ¶ 10.

IV. Analysis

Defendant argues he is entitled to summary judgment because there is no evidence before the court indicating he did anything to cause plaintiff injury. Def.'s Mem.

---

[3] There are two Peters declarations in the record on the pending motion. See Docket Nos. 52 & 66. Given that the bulk of the medical records submitted by defendant are not relevant to resolution of the motion for summary judgment, the court sua sponte will direct that all but the pages referenced here be sealed, to preserve the record while protecting patient's privacy. See, e.g., Evans v. Tilton, 2010 WL 3745648 (E.D. Cal. 2010); Brown v. Vore, 2009 WL 2393117, n.2 (S.D. Ohio).

P.&A. In Supp. Summ. J. at 7.  Defendant also notes that plaintiff does not dispute that defendant saw him for a followup visit and ordered an EKG, and argues that plaintiff cannot survive summary judgment because he has not presented "competent admissible evidence" to overcome defendant's declaration and that of Dr. Baker.  Id. at 6-8.

The court finds defendant has supported his arguments with admissible evidence, as set forth above, and therefore has met his burden of marshaling a record to demonstrate the absence of a genuine issue of material fact.  The court thus turns to a determination of whether plaintiff has met his burden, as the party opposing summary judgment, of establishing that a genuine issue as to any material fact actually does exist.  While the court views the evidence in the light most favorable to plaintiff, assuming the facts verified by plaintiff are true, it also bears in mind that plaintiff's burden involves more than simply showing "there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 587; see also Scott v. Adams, 550 U.S. 372, 380) (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott, 550 U.S. at 380 (citation omitted; emphases in original).

The court finds that plaintiff has not met his burden.  While defendant does not respond directly to plaintiff's assertion that defendant expressed his desire not to see plaintiff at all on August 18, 2004, defendant counters plaintiff's account that he did not conduct a physical exam by providing a detailed description of the exam he swears he administered, along with a copy of the progress note made the day of the exam.  While plaintiff indicates defendant did nothing for his pain, defendant avers his referral of plaintiff for an EKG was his way of responding to plaintiff's pain, after ruling out any evidence of possible post-surgical problems.  Defendant's expert witness, Dr. Baker, offers his independent opinion that defendant acted in accordance with applicable standards governing medical care during the August 18 visit.  Given the existence of the progress note for August 18, 2004, which is consistent with defendant's

declaration, and the bolstering effect of Dr. Baker's declaration, the court finds plaintiff has not established the existence of a genuine issue of material fact so as to survive summary judgment. There is no need for a jury to determine exactly what defendant and plaintiff said to each other during the August 18 visit, as such a determination is not material under these circumstances to resolution of plaintiff's claim. On the critical inquiry, as to whether defendant responded to plaintiff's medical complaints appropriately, the record independently supports defendant's representation that he did examine and treat plaintiff. Scott, 550 U.S. at 380 (noting that a court ruling on summary judgment should not adopt a version of the facts "blatantly contradicted by the record" even when "opposing parties tell two different stories"). To the extent plaintiff disagrees with defendant's response to his complaints on August 18, it is not his province to adjudge the proper course of his treatment. Toguchi, 391 F.3d at 1058; Sanchez, 891 F.2d at 242.

For the foregoing reasons, defendant's motion for summary judgment should be granted.

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to seal the exhibits to the declaration of Pamela R. Peters (docket nos. 52 & 66) with the exception of Exhibit A, page 1, Exhibit B, pages 1 and 229 (docket nos. 52 & 66), and Exhibit C (docket no. 66).

IT IS HEREBY RECOMMENDED that defendant Weiner's motion for summary judgment (docket no. 61) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

1  advised that failure to file objections within the specified time may waive the right to appeal the
2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  If a party does not plan
3  to file objections or a reply that party is encouraged to file a prompt notice informing the court as
4  much.

5  DATED: October 19, 2010.

_____
U.S. MAGISTRATE JUDGE

11  1 swea1407.57